1

2

3            **UNITED STATES DISTRICT COURT**

4           **NORTHERN DISTRICT OF CALIFORNIA**

5                **SAN JOSE DIVISION**

6

7   UNITED STATES OF AMERICA,          Case No.  19-cr-00611-BLF-2

8                    Plaintiff,
                                       **ORDER DENYING DEFENDANT**
9          v.                          **PAQUE'S § 2255 MOTION**

10  OCTAVIO PAQUE,                      [Re:  ECF 161]

11                   Defendant.

12

13

14       Defendant Octavio Paque pled guilty to, and was convicted of, conspiracy to distribute and

15  possess with intent to distribute cocaine.  He now moves to vacate the conviction under 28 U.S.C.

16  § 2255, claiming that his counsel provided ineffective assistance by failing to advise him that the

17  plea agreement rendered his removal from the United States a virtual certainty.  *See* § 2255 Mot.,

18  ECF 161.  The Government has filed an opposition to the motion and Defendant has filed a reply.

19  *See* Opp., ECF 172; Reply, ECF 177.

20       The Court held an evidentiary hearing on December 3, 2024, at which three witnesses

21  testified:  Jesse Ortiz, the attorney who represented Defendant at the plea stage and through

22  sentencing; Brian Hedrick, an immigration attorney Defendant consulted before entering his guilty

23  plea; and Defendant himself.  Defendant thereafter filed a post-hearing brief and the Government

24  filed a post-hearing response brief.  *See* Post-Hearing Briefs, ECF 209, 210.

25       Having considered the briefing, the evidence, and the relevant legal authorities, the Court

26  concludes that Defendant has failed to establish that Mr. Ortiz provided him with ineffective

27  assistance of counsel during his criminal proceedings.

28       The § 2255 motion is DENIED.

United States District Court
Northern District of California

## I.  BACKGROUND

On November 14, 2019, a grand jury issued an Indictment charging Defendant and two other individuals with drug offenses.  *See* Indictment, ECF 10 (Gov't Ex. 4).  Defendant is not a United States citizen, but at the time of the Indictment he was a green card holder with lawful permanent resident status.  *See* Evid. Hrg. Tr. 82:2-6, ECF 208.  His native language is Spanish, and he was provided with the services of a certified Spanish interpreter at his court appearances.  *See* Evid. Hrg. Tr. 81:10-20, ECF 208; Minute Entry, ECF 12.  Defendant speaks, reads, and writes some English.  *See* Evid. Hrg. Tr. 81:21-82:1.  Initially, he was represented by court-appointed counsel, but Mr. Ortiz substituted in as retained defense counsel in September 2021.  *See* Minute Entry, ECF 6; Minute Entry, ECF 60.

*Plea Discussions*

In the spring or summer of 2022, the parties discussed a possible plea agreement.  *See* Evid. Hrg. Tr. 13:18-24.  Mr. Ortiz went over the draft plea agreement with Defendant on multiple occasions, once with the assistance of a Spanish interpreter.  *See id.* 14:13-15:1.  Mr. Ortiz also referred Defendant to an immigration lawyer, Brian Hedrick, and Defendant had a consultation with Mr. Hedrick before signing the plea agreement.  *See id.* 31:4-15, 85:20-86:5.

*Plea Agreement*

Defendant signed the plea agreement on August 16, 2022, agreeing to plead guilty to Count One of the Indictment, which charged him with conspiring to distribute and possess with intent to distribute cocaine, its salts, optical and geometric isomers, and salts of its isomers in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C).  *See* Plea Agreement ¶ 1, ECF 124 (Gov't Ex. 3).  The plea agreement advises that "it is virtually certain that pleading guilty will have consequences with respect to my immigration status if I am not a natural born citizen of the United States," and acknowledges that the offense to which Defendant pled is a removable offense.  *See id*.  The plea agreement indicates that no one "can predict to a certainty" the effect of the conviction on Defendant's immigration status, but states, "I want to plead guilty regardless of any immigration consequences that may result from my guilty plea, even if the consequence is my automatic removal from the United States."  *Id.*

United States District Court
Northern District of California

1    The following affirmation appears directly above Defendant's signature on the plea

2   agreement: "I confirm that I read this entire Plea Agreement with the assistance of a Spanish

3   language interpreter and in the presence of my attorney." Plea Agreement ¶ 19. The plea

4   agreement also contains an affirmation by Mr. Ortiz that he fully explained the terms of the plea

5   agreement to Defendant, and a certification by a certified Spanish language interpreter stating that

6   the plea agreement was accurately translated to Defendant. *See id.* ¶ 20.

7        *Change of Plea Hearing*

8        The Court held a change of plea hearing on August 16, 2022. *See* Minute Entry, ECF 125.

9   Mr. Ortiz was not present at that hearing; another attorney from Mr. Ortiz's office, Andres Salas,

10  appeared for Defendant. *See id.* The Court engaged in an extensive colloquy with Defendant,

11  advising him of the rights he would give up by changing his plea to guilty. *See* Change of Plea

12  Hrg. Tr. 7:9-15:20, ECF 172-1 (Gov't Ex. 1). The Court then asked Defendant, "If you are not a

13  citizen of the United States, have you discussed the possible immigration consequences of a guilty

14  plea with your attorney?" *Id*. 15:21-23. Defendant responded in the affirmative. *See id.* 15:24.

15  The Court also asked Defendant, "Do you understand that in addition to any of the other

16  consequences of this conviction, if you are not a United States citizen, it is virtually certain that

17  the immigration authorities will deport you after you have served your prison sentence?" *Id*. 16:7-

18  11. Defendant again responded that he understood. *See id.* 16:12. The Government then made an

19  offer of proof, and Defendant pled guilty to Count One of the Indictment. *See id.* 17:8-21:19.

20        *Sentencing and Judgment*

21        A sentencing hearing was held on December 13, 2022. *See* Minute Entry, ECF 137. The

22  Court sentenced Defendant on Count 1 of the Indictment as follows: a 24-month term of

23  imprisonment, a 3-year term of supervised release, and a $100 assessment. *See id.* Judgment was

24  entered on December 19, 2022. *See* Judgment, ECF 138.

25        *Current § 2255 Motion*

26        Defendant filed the current § 2255 Motion on September 11, 2023, asserting a single claim

27  of ineffective assistance of counsel at the plea stage of his criminal proceedings. Defendant claims

28  that Mr. Ortiz did not tell him that a plea of guilty would make it virtually certain that he would

1    lose his lawful permanent resident status and be removed from the United States.  *See* § 2255 Mot.

2    at 6, 14.  Defendant claims that he would not have accepted the plea agreement had Mr. Ortiz

3    advised him that he would be deported, but rather "would have insisted on going to trial unless he

4    obtained a plea-agreement with more favorable terms."  *Id*. at 14.

5         Upon the completion of the briefing, the Court set an evidentiary hearing for October 8,

6    2024.  *See* Order, ECF 182.  The Court subsequently advanced the hearing to August 20, 2024,

7    after being informed that Defendant was awaiting deportation at an Immigration and Customs

8    Enforcement ("ICE") processing center in Tacoma, Washington.  *See* Order, ECF 185.  Due to a

9    delay in transporting Defendant, however, the evidentiary hearing did not go forward until

10   December 3, 2024.  *See* Minute Entry, ECF 204.

11        Three witnesses testified at the evidentiary hearing, as discussed in detail below:  Mr.

12   Ortiz, who represented Defendant in his criminal proceedings; Mr. Hedrick, who consulted with

13   Defendant on immigration issues; and Defendant himself.[1]  The Court also admitted five exhibits

14   offered by the Government:  Exhibit 1, the transcript of the change of plea hearing; Exhibit 3, the

15   plea agreement; Exhibit 5, a declaration signed by Mr. Ortiz; Exhibit 6, text messages between

16   Mr. Ortiz and Defendant; and Exhibit 8, a draft declaration of Mr. Ortiz that he did not sign.  *See*

17   Evid. Hrg. Tr., Index of Exhibits.  Defendant did not submit any exhibits.

18        The Court granted the parties' request for leave to file post-hearing briefs, directing that

19   Defendant's brief be filed by December 17, 2024 and that the Government's brief be filed by

20   December 24, 2024.  *See* Evid. Hrg. Tr. 99:20-100:10.  Both briefs have been filed, and the § 2255

21   motion is ready for disposition.  *See* Post-Hearing Briefs, ECF 209, 210.

22   **II.    LEGAL STANDARD**

23        A prisoner in federal custody may move to vacate, set aside, or correct his sentence based

24   on a claim that "the sentence was imposed in violation of the Constitution or laws of the United

25   States, or that the court was without jurisdiction to impose such sentence, or that the sentence was

26   in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]"  28

27

28   ───────────────
     [1] The Court found waiver of the attorney client privilege with respect to both Mr. Ortiz and Mr.
     Hedrick.  *See* Order, ECF 169 (Mr. Ortiz); Evid. Hrg. Tr. 64:25-65:17 (Mr. Hedrick).

United States District Court
Northern District of California

1   U.S.C. § 2255(a).  "Unless the motion and the files and records of the case conclusively show that

2   the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the

3   United States attorney, grant a prompt hearing thereon, determine the issues and make findings of

4   fact and conclusions of law with respect thereto."  28 U.S.C. § 2255(b).  "If the court finds . . . that

5   there has been such a denial or infringement of the constitutional rights of the prisoner as to render

6   the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and

7   shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may

8   appear appropriate."  *Id*.

9        A claim that defense counsel was ineffective at the plea stage is cognizable under § 2255.

10  *See United States v. Rodriguez-Vega*, 797 F.3d 781, 784 (9th Cir. 2015).  To prevail on such a

11  claim, the defendant must demonstrate that (1) "counsel's representation fell below an objective

12  standard of reasonableness," and (2) the defendant suffered resulting prejudice, meaning "there is

13  a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

14  would have been different."  *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984); *see also*

15  *United States v. Rodriguez*, 49 F.4th 1205, 1213 (9th Cir. 2022) (applying *Strickland* standard

16  when evaluating § 2255 claim of ineffective assistance of counsel).

## III.   DISCUSSION

18       In order to prevail on his § 2255 motion under the legal standards articulated above,

19  Defendant must establish both (1) that Mr. Ortiz's performance fell below an objective standard of

20  reasonableness, and (2) resulting prejudice, meaning a reasonable probability that the result of the

21  criminal proceedings would have been different but for Mr. Ortiz's deficient performance.  *See*

22  *Rodriguez*, 49 F.4th at 1213.  Defendant bears the burden of proof on both prongs.  *See Rodriguez-*

23  *Vega*, 797 F.3d at 786 (describing defendant's burden under *Strickland*); *Rodriguez*, 49 F.4th at

24  1213 (same).

### A.        First Prong of *Strickland*

26       The objective standard of reasonableness against which Mr. Ortiz's performance must be

27  measured is dependent on whether the immigration consequences of the contemplated guilty plea

28  are clear.  The duty of defense counsel is "more limited" when "the deportation consequences of a

United States District Court
Northern District of California

1    particular plea are unclear or uncertain." *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010); *see also*

2    *Rodriguez-Vega*, 797 F.3d at 786.  In those circumstances, "a criminal defense attorney need do no

3    more than advise a noncitizen client that pending criminal charges *may* carry a risk of adverse

4    immigration consequences." *Padilla*, 559 U.S. at 369 (emphasis added).  "However, where the

5    law is 'succinct, clear, and explicit' that the conviction renders removal virtually certain, counsel

6    must advise his client that removal is a virtual certainty." *Rodriguez-Vega*, 797 F.3d at 786

7    (quoting *Padilla*, 559 U.S. at 368-69).

8          The parties agree that Defendant's plea of guilty to the charged offense – conspiring to

9    distribute and possess with intent to distribute cocaine – renders his deportation a virtual certainty.

10   Mr. Ortiz testified to his understanding that Defendant's guilty plea makes deportation mandatory

11   given the nature of the drug offense.  *See* Evid. Hrg. Tr. 18:1-8, 31:8-11, 35:8-24.  Mr. Hedrick

12   testified that a non-citizen convicted of a drug trafficking offense is ineligible to assert most

13   defenses to removal, and that the only defense available to such an individual is under the

14   Convention Against Torture ("CAT").  *See id.* 45:13-16-24, 47:4-20.  The standard for obtaining

15   relief under CAT is very high, and requires proof that the non-citizen would suffer torture if

16   removed to his country of origin.  *See id.*  The record contains no indication that Defendant could

17   meet that standard.  Accordingly, the Court finds that Mr. Ortiz had a duty to advise Defendant

18   that removal from the United States was a virtual certainty if Defendant pled guilty to Count One

19   of the Indictment.

20         Defendant contends that Mr. Ortiz failed to give him the required advisement that entering

21   a guilty plea was virtually certain to result in deportation.  The Government contends that Mr.

22   Ortiz not only gave Defendant the required advisement, but also ensured that Defendant

23   understood the immigration consequences of his guilty plea by referring him to Mr. Hedrick, an

24   immigration attorney.  Defendant concedes that he consulted with Mr. Hedrick, but maintains that

25   Mr. Hedrick merely explained immigration procedures in general and did not advise him regarding

26   the immigration consequences of his contemplated guilty plea.

27         Both versions of events cannot be true.  The Court's determination whether Defendant has

28   proved his version of events, as required to demonstrate that Mr. Ortiz's performance was

United States District Court
Northern District of California

6

deficient, turns in large part on the credibility of the witnesses. The Court summarizes the relevant testimony below, in the order it was presented. By agreement of the parties, the Government's witnesses Mr. Ortiz and Mr. Hedrick testified first. Defendant testified last.

### 1.    Mr. Ortiz's Testimony

On direct examination by the Government's counsel, Mr. Ortiz testified that he has been a practicing attorney for thirty years and that his case load is half civil and half criminal. *See* Evid. Hrg. Tr. 10:1-18. Mr. Ortiz has represented non-citizens facing deportation as a result of pleading guilty. *See id.* 10:19-22. Mr. Ortiz represented Defendant prior to his entry of the guilty plea and through sentencing. *See id.* 11:12-12:25. During that time, Mr. Ortiz met with Defendant on ten or fifteen occasions, sometimes in person and sometimes on the telephone, and they conversed in a mixture of English and Spanish. *See id.* 12:18-13:17. Defendant told Mr. Ortiz that he was a lawful resident with a green card. *See id.* 12:1-4.

Mr. Ortiz testified that he met with Defendant three times to discuss the draft plea agreement, and that one of those meetings was conducted at the courthouse and with the aid of an interpreter. *See* Evid. Hrg. Tr. 14:13-15:21. According to Mr. Ortiz, he and Defendant discussed the immigration consequences of pleading guilty to a felony drug charge on multiple occasions. *See id.* 17:21-18:3. Specifically, Mr. Ortiz testified that, "I advised Mr. Paque that it was my understanding that given the nature of the offense, the drug offense, that it was a mandatory deportation consequence." *Id.* 18:6-8. However, Mr. Ortiz also advised Defendant to consult with an immigration attorney to be certain of the immigration consequences of pleading guilty. *See id.* 18:10-11. In Mr. Ortiz's view, Defendant understood Mr. Ortiz's advice that deportation would be mandatory if Defendant pled guilty. *See id.* 18:20-24.

Mr. Ortiz referred Defendant to Mr. Hedrick, an immigration attorney. *See* Evid. Hrg. Tr. 20:20-24. The Government introduced text messages between Mr. Ortiz and Defendant making clear that Defendant wished to consult with an immigration attorney before entering a guilty plea, and that Mr. Ortiz offered to get the change of plea hearing continued to give Defendant time to consult with Mr. Hedrick. *See id.* 21:11-22:25 & Ex. 6. Mr. Ortiz learned from Mr. Hedrick that the consultation occurred on August 9, 2022. *See id.* 23:1-19. A couple of days later, Defendant

United States District Court
Northern District of California

decided to change his plea to guilty.  *See id.* 23:20-24:3.  Defendant in fact pled guilty at the change of plea hearing on August 16, 2022.  *See id.* 24:4-5.

On cross-examination, Defendant's counsel elicited testimony from Mr. Ortiz that only a small portion of his criminal practice has been in federal court, and that he has represented non-citizens in immigration removal proceedings a total of five to seven times, all approximately nine or ten years ago.  *See* Evid. Hrg. Tr. 32:17-33:11.  Defendant's counsel then questioned Mr. Ortiz regarding his knowledge of immigration law, including what convictions render a non-citizen deportable.  *See id.* 34:11-39:20.  It appeared that Defendant's counsel was trying to establish that Mr. Ortiz lacked sufficient knowledge of immigration law to give Defendant adequate advice regarding the immigration consequences of a guilty plea.  *See id.*  Mr. Ortiz stated that he did not know with certainty what the immigration consequences of a guilty plea would be, and for that reason he referred Defendant to an immigration attorney.  *See id.* 40:5-8.

The Government's counsel had no questions for Mr. Ortiz on redirect.

### 2.    Mr. Hedrick's Testimony

Mr. Hedrick testified next.  The Government's counsel established on direct examination that Mr. Hedrick has been a lawyer for more than six years and has owned his own practice for three years.  *See* Evid. Hrg. Tr. 43:18-44:6.  Mr. Hedrick speaks Spanish and does not require the aid of an interpreter when meeting with Spanish-speaking clients.  *See id.* 45:3-9.  Mr. Hedrick gave an overview of the removal process, indicated that a non-citizen convicted of a controlled substance offense would be ineligible to present certain defenses to removal, and in essence stated that a non-citizen convicted of drug trafficking would have only one potential defense to removal under CAT.  *See id.* 45:13-20.  Mr. Hedrick testified that a non-citizen would have a very high standard to meet for relief under CAT.  *See id.*  Mr. Hedrick stated that it is his regular practice to discuss those aspects of the removal process with clients facing a conviction for a federal drug trafficking crime.  *See id.* 48:2-6.

Mr. Hedrick then testified that Mr. Ortiz referred Defendant to him to get a more thorough explanation of the immigration consequences of Defendant's contemplated guilty plea; Mr. Hedrick was aware Defendant was facing a potential conviction for a federal drug trafficking

offense; and Mr. Hedrick had a consultation with Defendant before Defendant entered his guilty plea. *See* Evid. Hrg. Tr. 48:7-24. Mr. Hedrick disclosed that he took notes during his consultation with Defendant, shared those notes with Mr. Ortiz, and also discussed the consultation with Mr. Ortiz. *See id.* 51:20-14. However, at that point in his testimony Mr. Hedrick did not provide any details regarding the substance of his notes or the consultation. *See id.* It was clear that Mr. Hedrick was attempting to answer the Government counsel's questions without violating the attorney-client privilege.

On cross-examination, Defendant's counsel established that Mr. Hedrick had one consultation with Defendant prior to Defendant's entry of his guilty plea, and that the consultation was via a telephone call on August 9, 2022. *See* Evid. Hrg. Tr. 52:23-53:2. Mr. Hedrick did not recall how long the call lasted, but he stated that his consultations typically are for one hour. *See id.* 53:3-13. Defendant's counsel then asked Mr. Hedrick several questions going to his knowledge of the criminal charge, the contents of the plea agreement, and what he discussed with Defendant. *See id.* 53:14-58:9. It became clear that Defendant's counsel intended to argue that the advice given by Mr. Hedrick was deficient, not because of any incompetence on Mr. Hedrick's part, but because Mr. Hedrick did not receive sufficient information from Mr. Ortiz to adequately advise Defendant. *See id.* 60:11-64:11. The Court found that line of argument sufficient to waive the attorney-client privilege as to Mr. Hedrick. *See id.* 64:25-65:17.

The Government was allowed to resume its direct examination of Mr. Hedrick in light of the waiver of the attorney-client privilege. Mr. Hedrick testified that Mr. Ortiz told him (Mr. Hedrick) that Defendant was considering pleading guilty to "21 U.S.C. 846 and 841, one being distribution of a controlled substance, the other I think being a conspiracy." Evid. Hrg. Tr. 67:14-23. Mr. Ortiz told Mr. Hedrick that Defendant was facing 37 months in prison, and that Defendant needed to speak with an immigration attorney about the consequences of the contemplated guilty plea. *See id.* 68:6-15. Mr. Hedrick stated that Defendant provided additional information about the charge he was facing, including the type of controlled substance. *See id.* 68:19-24. Mr. Hedrick felt that he had enough information about the charge Defendant was facing to provide him with advice regarding the immigration consequences of a guilty plea. *See id.* 69:7-10. The advice

1    provided by Mr. Hedrick included an explanation of the removal process, the information that

2    conspiracy to distribute a controlled substance is an aggravated felony precluding most defenses to

3    removal, and Mr. Hedrick's opinion that the only defense to removal that might be available to

4    Defendant would be under the Convention Against Torture.  *See id.* 71:5-22.

5          On continued cross-examination, Defendant's attorney asked Mr. Hedrick point-blank,

6    "Did you tell him that his deportation was a virtual certainty or words to that effect?"  Evid. Hrg.

7    Tr. 77:2-4.  Mr. Hedrick answered, "Yes."  *Id.*  A few moments later, Mr. Hedrick reiterated that

8    he had discussed with Defendant the fact that Defendant is subject to mandatory deportation.  *See*

9    *id.* 77:19-21.

10    ### 3.      Defendant's Testimony

11          Defendant's counsel advised the Court at the start of the evidentiary hearing that he did not

12    intend to call any witnesses and that Defendant's declaration, which was filed in support of the §

13    2255 motion, would be offered in lieu of Defendant's live testimony.  *See* Evid. Hrg. Tr. 5:15-6:5.

14    The Court expressed the view that Mr. Paque, having offered a declaration, would be subject to

15    cross-examination by the Government.  *See id.* 6:6-8.  Both Defendant's counsel and the

16    Government's counsel agreed.  *See id.* 6:9-10.  After the Government's witnesses finished

17    testifying, the Government indicated that it did wish to cross-examine Defendant.  *See id.* 80:1-4.

18    The Court noted that "Mr. Paque voluntarily submitted a declaration which has been offered into

19    evidence and therefore makes himself subject to cross-examination. There has been no

20    objection."  *Id.* 80:6-9.  Defendant thereafter was sworn and the Government began its cross-

21    examination of him.  *See id.* 81:4-14.

22          Defendant confirmed that, prior to signing the plea agreement, he met with Mr. Ortiz

23    multiple times, went over the plea agreement with Mr. Ortiz, went over the plea agreement with a

24    Spanish language interpreter, and consulted with Mr. Hedrick.  *See* Evid. Hrg. Tr. 82:23-86:5.

25    Defendant also confirmed his acknowledgment to the Court at his change of plea hearing that he

26    understood pleading guilty would mean it was virtually certain that he would be deported after

27    serving his sentence if he was not a citizen.  *See id.* 91:10-14.

28          However, Defendant denied that he actually understood the language in the plea agreement

United States District Court
Northern District of California

1  relating to immigration consequences of pleading guilty, testifying that "that whole paragraph was

2  always confusing for me," and that "the whole agreement was confusing for me."  Evid. Hrg. Tr.

3  95:4-96:3.  Defendant also denied that Mr. Ortiz advised him that deportation was mandatory

4  based on the charges to which Defendant was going to plead guilty.  *See id*. 92:21-24.  According

5  to Defendant, when he asked Mr. Ortiz what would happen with respect to deportation, Mr. Ortiz

6  said "that he didn't know."  *See id.* 97:25-98:4.

7      Defendant likewise denied that Mr. Hedrick advised him regarding the deportation

8  consequences of his guilty plea.  *See* Evid. Hrg. Tr. 86:6-15.  It is Defendant's position that Mr.

9  Hedrick advised him "about the immigration process but not about the consequences."  *See id.*

10 Defendant testified that Mr. Hedrick talked "about the process of deportation, about people with

11 federal charges, but not particularly about my case because he didn't have my information."  *See*

12 *id.* 87:12-15.  According to Defendant, his consultation with Mr. Hedrick was very short, only

13 fifteen minutes.  *See id.* 88:19-20.  Defendant testified that "there are many things that I don't

14 remember" about his consultation with Mr. Hedrick.  *Id*. 88:20.  When asked whether Mr. Hedrick

15 advised him about the potential defenses Defendant could raise to deportation, Defendant

16 responded, "I don't remember that very well."  *Id*. 88:8-11.  When asked whether Mr. Hedrick

17 advised him about the potential defenses Defendant could *not* raise to deportation, Defendant

18 responded, "I don't remember very well."  *Id*. 88:12-15.

19          **4.      Court's Credibility Determinations**

20      Having carefully considered the demeanor of the witnesses and the totality of their

21 testimony, the Court makes the following credibility determinations.  The Court finds credible Mr.

22 Ortiz's testimony that he advised Defendant that it was his (Mr. Ortiz's) understanding that given

23 the nature of the offense to which Defendant was about to plead guilty, deportation was a

24 mandatory consequence.  *See* Evid. Hrg. Tr. 18:6-8.  The Court also finds credible Mr. Hedrick's

25 testimony that he advised Defendant that he would be subject to mandatory deportation if he

26 entered the contemplated guilty plea.  *See id.* 77:2-21.  Finally, the Court finds credible Mr.

27 Hedrick's testimony that he received sufficient information from Mr. Ortiz and Defendant himself

28 to provide Defendant with advice regarding the immigration consequences of a guilty plea.  *See id.*

*United States District Court*
*Northern District of California*

11

1    67:14-69:10.  Mr. Ortiz and Mr. Hedrick appeared to have clear recollections about the advice

2    they gave to Defendant, and their testimony was consistent internally and with each other.

3          Moreover, the testimony of Mr. Ortiz and Mr. Hedrick is consistent with Defendant's

4    statements to the Court during the change of plea hearing, specifically, Defendant's statement that

5    he understood that if he is not a United States citizen, it is virtually certain that the immigration

6    authorities would deport him after he served his prison sentence.  *See id.* 16:7-12.  The Court is

7    not suggesting that its colloquy with Defendant could cure a deficiency in Mr. Ortiz's

8    performance, if such a deficiency were established.  "The government's performance in including

9    provisions in the plea agreement, and the court's performance at the plea colloquy, are simply

10   irrelevant to the question whether *counsel's* performance fell below an objective standard of

11   reasonableness."  *Rodriguez-Vega*, 797 F.3d at 787 (citing *Padilla*, 559 U.S. at 371).  The Court

12   simply observes that Defendant's statements during the plea colloquy are consistent with the

13   testimony of Mr. Ortiz and Mr. Hedrick that they explained the immigration consequences of a

14   guilty plea to Defendant.

15         The Court does not find credible Defendant's testimony that neither Mr. Ortiz nor Mr.

16   Hedrick advised him of the deportation consequences of his guilty plea.  Defendant testified that

17   he met with Mr. Ortiz multiple times before pleading guilty and that he (Defendant) told the Court

18   at his change of plea hearing that he was satisfied with Mr. Ortiz's representation.  *See* Evid. Hrg.

19   Tr. 82:23-25, 90:16-19.  That testimony is inconsistent with Defendant's testimony that Mr. Ortiz

20   said he did not know what the immigration consequences of a guilty plea would be.  With respect

21   to Defendant's consultation with Mr. Hedrick, it defies logic that Defendant would have asked Mr.

22   Ortiz to get a continuance of the change of plea hearing so as to allow Defendant an opportunity to

23   consult with an immigration lawyer about the consequences of entering a guilty plea, and then be

24   satisfied with information regarding immigration procedures in general.  However, there is no

25   evidence that Defendant complained about his consultation with Mr. Hedrick, and in fact

26   Defendant decided to change his plea shortly after that consultation.  The Court notes as well that

27   Defendant did not have a clear memory of certain portions of his consultation with Mr. Hedrick.

28         Based on the evidence before the Court, it appears that Mr. Ortiz not only gave Defendant

United States District Court
Northern District of California

12

the required advisement that deportation was a virtual certainty if Defendant pled guilty, but also ensured that Defendant understood the immigration consequences of his guilty plea by referring him for a consultation with Mr. Hedrick, an immigration attorney.  The Court thus concludes that Defendant has failed to carry his burden of showing that Mr. Ortiz's performance was deficient.

### B.    Second Prong of Strickland

Having determined that Defendant has not established deficient performance, the Court need not and does not address *Strickland*'s second prong, prejudice.  *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one.").

## IV.  ORDER

(1)    Defendant's § 2255 motion is DENIED; and

(2)    This order terminates ECF 161.


Dated:  January 16, 2025

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California